UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------X

DAVID KELLERAN,                    SUMMONS ISSUED

                                    Plaintiff,

        -against-                     **CV 12**

CITY OF NEW YORK, DEPUTY INSPECTOR TERENCE
HURSON, POLICE OFFICER KAROLINA SOLON, and POLICE
OFFICERS JOHN DOE 1 through 5 (the names John Doe being
fictitious, as the true names are presently unknown), in Their
Individual and Official Capacities,

                                    Defendants.

------------------------------------------------------------------------------X

FILED
CLERK

2012 AUG -8  PM 12: 37

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK
        **COMPLAINT**

Docket No.

**3938**

Jury Trial Demanded

WEINSTEIN, J.

ORENSTEIN, M.J

        Plaintiff DAVID KELLERAN, by his attorney, The Trainor Law Firm, P.C., makes the

following allegations against Defendants:

## PRELIMINARY STATEMENT

        1.      Plaintiff brings this action for compensatory damages, punitive damages, and

attorney's fees, pursuant to 42 U.S.C. §§ 1983 and 1988, for violations of his civil rights, as

these rights are secured by these statutes and the Constitutions of the State of New York and

United States.  Plaintiff also asserts supplemental state law claims.

## JURISDICTION

        2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth

and Fourteenth Amendments to the United States Constitution.

        3.      This Court has jurisdiction to hear all claims in this matter, pursuant to 28 U.S.C.

§§ 1331, 1343, and 1367.

## VENUE

4.      Venue is properly laid in the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b), because this is the District in which the claim arose.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter, pursuant to FED. R. CIV. P. 38 (b).

## PARTIES

6.      Plaintiff DAVID KELLERAN is a fifty-one year old man and United States citizen who resides in Suffolk County, New York.

7.      Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant CITY OF NEW YORK maintains the New York City Police Department ("the NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the CITY OF NEW YORK.

9.      That at all times hereinafter mentioned, individually named defendant DEPUTY INSPECTOR TERENCE HURSON was a duly sworn police officer and supervisor of the NYPD and acting according to his official duties with the NYPD; and, as a Deputy Inspector, he was the 94th Precinct's highest ranking uniformed officer, the commanding officer, and an NYPD policy maker with respect to the matters complained of herein and other NYPD matters.

10.     That at all times hereinafter mentioned, the individually named defendants, POLICE OFFICER KAROLINA SOLON and POLICE OFFICERS JOHN DOE 1 through 5, were duly sworn police officers of the NYPD and were acting under the supervision of the

2

NYPD and according to their official duties.

11.     That at all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the CITY OF NEW YORK.

12.     Each and all of the acts of the defendants alleged herein were done by these defendants while acting within the scope of their employment by Defendant CITY OF NEW YORK.

13.     Defendants DEPUTY INSPECTOR TERENCE HURSON, POLICE OFFICER KAROLINA SOLON, and POLICE OFFICERS JOHN DOE 1 through 5 are sued in their individual and official capacities for the conduct alleged herein.

## FACTS

14.     On July 10, 2011, at approximately 12:15 a.m., Mr. Kelleran was lawfully inside of an apartment located on the upstairs floor of 68 Greenpoint Avenue, in Kings County, New York, when the defendants knocked on the apartment door, instructed him to come with them downstairs to Mr. Kelleran's then-restaurant, located at 68 Greenpoint Avenue, called "68," and informed him that a check he had recently sent to the New York State Liquor Authority ("the SLA") to renew 68's liquor license had bounced.

15.     By letter dated July 5, 2011 (barely five (5) days prior to July 10, 2011, at 12:15 a.m.), the SLA, based in Albany, New York, informed Mr. Kelleran that "check no. 1066 in the amount of $4,382.00 for payment of fees for license no. 1189017, has been returned to the New York State Liquor Authority due to in sufficient *[sic]* funds." Letter from the SLA, dated July 5, 2011, signed by Jacqueline Held, attached hereto as Exhibit A ("Ex. A"). The letter further

3

advised that Mr. Kelleran "Please forward WITHIN 10 DAYS OF THE DATE OF THIS
LETTER, a **certified check or money order**, made payable to the New York State Liquor
Authority in order to avoid possible disciplinary action." Ex. A (emphasis in original).

16.     Despite the SLA's informing Mr. Kelleran that he had "10 DAYS OF THE DATE
OF THIS LETTER" to send the SLA a new check, on July 10, 2011, the defendants placed
handcuffs on Mr. Kelleran's wrists and arrested him on the ground that his restaurant, 68, was
selling alcoholic beverages to its patrons without a valid liquor license (68's liquor license was
the license referred to in the SLA's July 5, 2011 letter). The defendants then transported Mr.
Kelleran to a jail cell in the 94th Precinct, where he remained imprisoned for a number of hours
until they transported him to the New York City Department of Corrections' Brooklyn Central
Booking facility.

17.     The defendants imprisoned Mr. Kelleran until his arraignment, on July 11, 2011,
in Kings County Criminal Court on the charges filed under docket number 2011KN054933.
Upon the allegations of Defendant POLICE OFFICER KAROLINA SOLON, the People of the
State of New York charged Mr. Kelleran with violating New York's Alcoholic Beverage Control
Law §§ 100(1) and 64-b. Specifically, Defendant POLICE OFFICER KAROLINA SOLON
alleged that alcoholic beverages were being sold to patrons in a "commercial establishment"
located at "68 Greenpoint Avenue, County of Kings, State of New York," and that a review of
SLA records revealed that Mr. Kelleran is the "owner of this location and that the liquor license
for the location is expired."

18.     While Mr. Kelleran was in NYPD custody and imprisoned, the defendants,
without notice or process, permission or authority, or lawful warrant or justification, unlawfully
converted Mr. Kelleran's substantial stock of liquor and alcohol that he lawfully possessed,

4

owned, and stored at 66 Greenpoint Avenue, in Kings County, New York. Mr. Kelleran owned a

bar called "Coco66," which is located at 66 Greenpoint Avenue, and for which he had a valid

liquor license. Coco66 is located next to 68, but it is a separate bar with a separate liquor license,

which was valid at all times relevant here, and was lawfully operating and open for business

when the defendants arrested Mr. Kelleran. Specifically, the defendants poured all of the liquor

and alcohol in Coco66 down the drain of Mr. Kelleran's establishment.

19.     Mr. Kelleran could no longer operate Coco66 because the defendants wrongfully

plundered and dumped Coco66's substantial stock of liquor and alcohol down the drain. Unable

to resupply Coco66's stock as a result of the defendants' conduct, Mr. Kelleran has been unable

to reopen Coco66 for business. Coco66's doors have been closed to the public since the

defendants' wrongful conduct on July 10, 2011.

20.     The defendants initiated the arrest and prosecution of Mr. Kelleran for the

purpose of obtaining a collateral objective outside the legitimate ends of the legal process, to wit,

to cover up their aforementioned abuse of authority and illegal activity, and to unlawfully shut

down Mr. Kelleran's lawfully operating commercial establishment Coco66.

21.     This abuse of process, deprivation of substantive and procedural due process, and

deprivation of property without due process of law was initiated at the highest levels of the

NYPD command structure. NYPD supervisory personnel and individually named defendant

DEPUTY INSPECTOR TERENCE HURSON made his personal involvement in violating Mr.

Kelleran's rights and the collateral and unlawful objective in this case clear when he informed

the *Brooklyn Paper* that, "'This is something I've wanted to do for a while – we've had noise

complaints about this place,' said 94th Precinct Deputy Inspector Terence Hurson, adding that

dumping the booze down the drains 'took a while.'" Aaron Short, *Coco66 gets 86'ed! Cops*

5

*shutter Greenpoint club in liquor violation*, BROOKLYN PAPER, July 18, 2011,

http://www.brooklynpaper.com/stories/34/29/wb_coco66closed_2011_07_22_bk.html, attached

hereto as Exhibit B ("Ex. B"). Defendant DEPUTY INSPECTOR TERENCE HURSON further

added that if Mr. Kelleran reopened Coco66, "We'll go back there and check it out." Ex. B.

Although the defendants arrested Mr. Kelleran for selling liquor without a license at "68," it is

revealing that this press account speaks solely to Coco66 and begins with the introduction that

the police raided "Coco66 early on Sunday morning and arrested its owner for allegedly selling

alcohol without a license . . . ." Ex. B.

  22. What is more, by his own admission, Defendant DEPUTY INSPECTOR

TERENCE HURSON is command and policy-making personnel within the NYPD. He informed

the *Greenpoint Gazette* that, "'I'll basically be chief of police for the whole 94th precinct; it's a

moment I've always been working towards for a long time,' Hurson said." Juliet Linderman,

*Garden Spotlight: Meet your New Commanding Officer*, GREENPOINT GAZETTE, Nov. 11, 2010,

http://www.greenpointnews.com/news/2723/garden-spotlight-meet-your-new-commanding-

officer, attached hereto as Exhibit C ("Ex. C").

  23. The aforementioned abuse of process also compelled Mr. Kelleran to appear in

Kings County Criminal Court on August 16, 2011, with respect to the charges that Mr.

Kelleran's establishment "68" was selling alcoholic beverages to patrons with an expired liquor

license. Notwithstanding the NYPD's wrongful conduct and the strong defenses to the

allegations in the accusatory instrument under Docket No. 2011KN054933, *see* Ex. A., Mr.

Kelleran pleaded guilty to a non-criminal violation offense to dispose of the matter.

  24. All of the acts complained of herein occurred while other NYPD officers,

including the individually named defendants, failed to intervene in the illegal conduct described

herein.

25.     All of these acts occurred as a direct result of the unconstitutional policies, customs or practices of the CITY OF NEW YORK, including, without limitation, the inadequate screening, hiring, retaining, training, promoting, and compensating and supervising its employees.

26.     The acts complained of herein are not an isolated incident. Defendant CITY OF NEW YORK is aware, from lawsuits, notices of claim, press accounts, and complaints filed with the NYPD's Internal Affairs Bureau and the CITY OF NEW YORK's Civilian Complaint Review Board, that many NYPD officers, including the individually named defendants, abuse their authority and are insufficiently trained regarding what constitutes probable cause to arrest individuals, and when they have legal justification and authority to summarily destroy lawfully held property.

27.     Defendant CITY OF NEW YORK is further aware that such conduct and improper training has often resulted in a deprivation of civil rights. Despite such notice, Defendant CITY OF NEW YORK has failed to take corrective action. This failure caused the defendants in the present case to violate Mr. Kelleran's civil rights.

28.     Moreover, upon information and belief, Defendant CITY OF NEW YORK was aware, prior to the incident, that the individual defendants in this case lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. Despite such notice, Defendant CITY OF NEW YORK has retained these officers, and failed to adequately train and supervise them, and kept individually named defendant DEPUTY INSPECTOR TERENCE HURSON in a supervisory and command position.

29.     As a result of the defendants' conduct, Plaintiff DAVID KELLERAN sustained,

7

*inter alia*, physical and mental injuries, emotional distress, embarrassment, humiliation, deprivation of his property, economic loss, lost profits, and deprivation of his constitutional rights.

## FEDERAL CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. § 1983)

30.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "29" with the same force and effect as if fully set forth herein.

31.    All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under the color of state law.

32.    All of the aforementioned acts deprived Plaintiff DAVID KELLERAN of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

33.    The acts complained of were carried out by the individual defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

34.    The acts complained of were carried out by the individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the CITY OF NEW YORK and the NYPD, and all under the supervision of ranking officers of the NYPD, including Defendant DEPUTY INSPECTOR TERENCE HURSON.

35.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

8

## AS AND FOR A SECOND CAUSE OF ACTION
(Deprivation of Due Process Under 42 U.S.C. § 1983)

36.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "35" with the same force and effect as if fully set forth herein.

37.     Defendants, without a lawful warrant, a legal privilege, judicial process, or any justification whatsoever, unlawfully deprived Plaintiff of his lawful stock of alcohol and liquor, for which he had a valid liquor license and lawfully kept on the premises of his commercial establishment, when they poured all of Plaintiff's alcohol and liquor down the drain without notice or providing Plaintiff an opportunity to be heard, causing the irreversible destruction of this property.

38.     As a result of the foregoing, Plaintiff DAVID KELLERAN was deprived of his protected property interest and his right to due process of law, causing him substantial economic and emotional injury.

## AS AND FOR A THIRD CAUSE OF ACTION
(Malicious Abuse of Process under 42 U.S.C. § 1983)

39.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "38" with the same force and effect as if fully set forth herein.

40.     Defendants issued criminal process against Plaintiff by causing his arrest and prosecution in Kings County Criminal Court.

41.     Defendants caused Plaintiff DAVID KELLERAN to be arrested and prosecuted in order to obtain a collateral objective outside the legitimate ends of the legal process, to wit, to cover up their aforementioned abuse of authority and illegal activity, and to unlawfully shut down Plaintiff's lawfully operating commercial establishment Coco66, and thereby violated Plaintiff's right to be free from malicious abuse of process.

9

## AS AND FOR A FOURTH CAUSE OF ACTION
(Failure to Intervene under 42 U.S.C. § 1983)

42.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "41" with the same force and effect as if fully set forth herein.

43.     Defendants had an affirmative duty to intervene on behalf of Plaintiff DAVID KELLERAN, whose constitutional rights were being violated in their presence by other police officers.

44.     Defendants failed to intervene to prevent the unlawful conduct described herein.

45.     As a result of the foregoing, Plaintiff DAVID KELLERAN's liberty was restricted for an extended period of time, he was put in fear of his safety, and he was humiliated and subjected to handcuffing, other physical restraints, and ultimately an extended period of incarceration, as well as substantial economic harm.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Deprivation of Substantive Due Process under 42 U.S.C. § 1983)

46.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "45" with the same force and effect as if fully set forth herein.

47.     Defendants' purposeful destruction of Plaintiff's lawful stock of alcohol and liquor was so outrageously arbitrary and conscience-shocking as to be a gross abuse of governmental authority, and so unjustified by any legitimate objective of law enforcement as to be completely barred by the Fourteenth Amendment.

48.     As a result of the foregoing, Plaintiff DAVID KELLERAN was deprived of his liberty and right to substantive due process, causing him substantial emotional and economic injury.

10

## AS AND FOR A SIXTH CAUSE OF ACTION
(Supervisory Liability under 42 U.S.C. § 1983)

49.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "48" with the same force and effect as if fully set forth herein.

50.     The supervisory defendants personally caused Plaintiff DAVID KELLERAN's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees.

51.     Specifically, Supervisory Defendant DEPUTY INSPECTOR TERENCE HURSON directly participated in the violation of Plaintiff's rights, and evidenced his failure to remedy this violation, his participation in this violation, his authorization of this violation as a matter of policy, and his specific intent to violate Plaintiff DAVID KELLERAN's constitutional rights by informing the *Brooklyn Paper* that, "'This is something I've wanted to do for a while – we've had noise complaints about the place,' said 94th Precinct Deputy Inspector Terence Hurson, adding that dumping the booze down the drains 'took a while.'" Ex. B. Touting his involvement in the violation of Plaintiff DAVID KELLERAN's rights and candid in targeting Plaintiff for future potential violations of Plaintiff's constitutional rights, Supervisory Defendant DEPUTY INSPECTOR TERENCE HURSON told the *Brooklyn Paper* that if Mr. Kelleran reopened Coco66, "We'll go back there and check it out." Ex. B.

52.     By his own admission, Defendant DEPUTY INSPECTOR TERENCE HURSON is the Chief of Police in the NYPD's 94th Precinct, to wit, "'I'll basically be chief of police for the whole 94th precinct; it's a moment I've always been working towards for a long time,' Hurson said." Ex. C.

53.     As a result of the supervisory defendants' conduct, and Supervisory Defendant

11

DEPUTY INSPECTOR TERENCE HURSON's conduct, Plaintiff DAVID KELLERAN has suffered a loss of liberty and property, a violation of procedural and substantive due process, and substantial economic and emotional injury.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Municipal Liability under 42 U.S.C. § 1983)

54.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "53" with the same force and effect as if fully set forth herein.

55.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority that is forbidden by the United States Constitution.

56.     Defendant DEPUTY INSPECTOR TERENCE HURSON was responsible for overseeing the operations of the NYPD's 94th Precinct.  By his own admission, Defendant DEPUTY INSPECTOR TERENCE HURSON is the "chief of police for the whole 94th precinct . . . ."  Ex. C.  Accordingly, he controls and makes the policy for the 94th Precinct.  Indeed, Defendant DEPUTY INSPECTOR TERENCE HURSON admitted that he was personally involved in, and in control of, the NYPD operation that deprived Plaintiff DAVID KELLERAN of his constitutional rights, to wit, "This is something I've wanted to do for a while – we've had noise complaints about this place,' said 94th Precinct Deputy Inspector Terence Hurson, adding that dumping the booze down the drains 'took a while.'"  Ex. B.  Accordingly, Defendant DEPUTY INSPECTOR TERENCE HURSON had final decision-making authority with respect to the violations of Plaintiff DAVID KELLERAN's constitutional rights and the CITY OF NEW YORK is, therefore, liable as a municipality for the violation of Plaintiff DAVID KELLERAN's rights.

12

57.    Furthermore, the aforementioned customs, policies, usages, practices, procedures, and rules of the NYPD include, but are not limited to, arresting citizens without probable cause and then committing perjury and/or manufacturing evidence and/or engaging in falsification in an effort to convict such individuals.  Additionally, the CITY OF NEW YORK engaged in a policy, custom or practice of summarily seizing and destroying the lawful property of individuals without notice or other indicia of due process of law.  Further, the CITY OF NEW YORK engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training, promoting, compensating, and supervising its employees that was the driving force behind the violation of Plaintiff DAVID KELLERAN's rights as described herein.  As a result of the failure of the CITY OF NEW YORK to properly recruit, screen, train, discipline, promote, compensate, and supervise its officers, including the individual defendants, Defendant CITY OF NEW YORK has tacitly authorized, ratified, and has been deliberately indifferent to the acts and conduct complained of herein.

58.    The foregoing customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK and the NYPD constituted deliberate indifference to the safety, well-being, and constitutional rights of Plaintiff DAVID KELLERAN; and, moreover, as evidenced by the admissions of NYPD policy-maker Defendant DEPUTY INSPECTOR TERENCE HURSON, these customs were specifically intended to deprive Plaintiff DAVID KELLERAN of his constitutional rights.

59.    The foregoing customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiff DAVID KELLERAN as alleged herein.

60.    The foregoing customs, policies, usages, practices, procedures, and rules of the

13

CITY OF NEW YORK and the NYPD were the driving force behind the constitutional violations suffered by Plaintiff DAVID KELLERAN as alleged herein.

61. As a result of the foregoing customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK and the NYPD, Plaintiff DAVID KELLERAN was subjected to a malicious abuse of process, a destruction of his lawful property, a violation of his substantive and procedural due process rights, and stripped of his right to have police officers intervene while and when his rights were being violated.

62. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating Plaintiff DAVID KELLERAN's constitutional rights.

63. All of Defendants' aforementioned conduct deprived Plaintiff DAVID KELLERAN of federally protected rights, including, but not limited to, the right:

        A.     Not to be deprived of liberty without due process of law;

        B.     Not to be deprived of property without due process of law;

        C.     Not to be deprived of substantive due process of law;

        D.     To be free from government-executed conversion;

        E.     To be free from malicious abuse of process; and

        F.     To be free from the failure to intervene.

64. As a result of the foregoing, Plaintiff DAVID KELLERAN is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury.

## SUPPLEMENTAL STATE LAW CLAIMS

65.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "64" with the same force and effect as if fully set forth herein.

66.    Within ninety (90) days after the claim herein accrued, Plaintiff duly served upon, presented to, and filed with, the CITY OF NEW YORK, a Notice of Claim setting forth all the facts and information required under the General Municipal Law 50-e.

67.    The CITY OF NEW YORK has wholly neglected or refused to make an adjustment or payment thereof, and more than thirty (30) days have elapsed since the presentation of such claim to the CITY OF NEW YORK.

68.    This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

69.    Plaintiff has complied with all conditions precedent to maintaining this action.

70.    This action falls within one or more of the exceptions as outlined in N.Y. C.P.L.R. § 1602.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
(Conversion under the laws of the State of New York)

71.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "70" with the same force and effect as if fully set forth herein.

72.    Defendants, without authorization or justification, lawful privilege, or permission or authority, interfered with and exercised dominion and control over Plaintiff's lawful stock of alcohol and liquor and irreversibly destroyed it by pouring all of this alcohol and liquor down the drain, while Plaintiff was in NYPD custody and imprisoned, completely depriving Plaintiff of this property for which there could be no return, nor demand for return.

15

73.     As a result of the foregoing, Plaintiff DAVID KELLERAN was deprived of this property, causing him substantial economic and emotional injury

## AS AND FOR A NINTH CAUSE OF ACTION
(Malicious Abuse of Process under the laws of the State of New York)

74.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "73" with the same force and effect as if fully set forth herein.

75.     Defendants issued criminal process against Plaintiff by causing his arrest and prosecution in Kings County Criminal Court.

76.     Defendants caused Plaintiff DAVID KELLERAN to be arrested and prosecuted in order to obtain a collateral objective outside the legitimate ends of the legal process, to wit, to cover up their aforementioned abuse of authority and illegal activity, and to unlawfully shut down Plaintiff's lawfully operating commercial establishment Coco66, and thereby violated Plaintiff's right to be free from malicious abuse of process.

## AS AND FOR A TENTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress under the laws of the State of New York)

77.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "76" with the same force and effect as if fully set forth herein.

78.     The aforementioned conduct, including purposefully destroying vast quantities of lawfully possessed liquor and alcohol in order to shut down a lawfully operating commercial establishment, was extreme and outrageous, and exceeded all reasonable bounds of decency, especially in light of Defendants' official capacity as NYPD police officers.

79.     Defendants committed this conduct with the intent of causing Plaintiff DAVID KELLERAN severe emotional distress, evidenced by, among other facts, DEFENDANT DEPUTY INSPECTOR TERENCE HURSON statement that, "'This is something I've wanted to

16

do for a while – we've had noise complaints about this place,' said 94th Precinct Deputy Inspector Terence Hurson, adding that dumping the booze down the drains 'took a while[,]'" and further adding that if Plaintiff DAVID KELLERAN reopened Coco66, "We'll go back there and check it out." Ex. B.

80.     Defendants committed this conduct while acting within the scope of their employment with Defendant CITY OF NEW YORK.

81.     Defendants committed this conduct while acting in furtherance of their employment with Defendant CITY OF NEW YORK.

82.     As a result of Defendants' conduct, Plaintiff DAVID KELLERAN suffered emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright, and loss of freedom and property.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION**
(Negligent Screening, Hiring, and Retention under the laws of the State of New York)

83.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraph numbered "1" through "82" with the same force and effect as if fully set forth herein.

84.     Upon information and belief, Defendant CITY OF NEW YORK failed to use reasonable care in the screening, hiring and retention of the individually named defendants who conducted and participated in the arresting, searching, prosecuting, incarcerating, and depriving of property of Plaintiff DAVID KELLERAN.

85.     Defendant CITY OF NEW YORK knew, or should have know in the exercise of reasonable care, the propensities of the individual defendants to engage in the wrongful conduct alleged in this Complaint.

### AS AND FOR A TWELFTH CAUSE OF ACTION
(Negligent Training and Supervision under the laws of the State of New York)

86.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "85" with the same force and effect as if fully set forth herein.

87.    Upon information and belief, Defendant CITY OF NEW YORK failed to use reasonable care in the training and supervision of the individually named defendants who conducted and participated in the arresting, searching, prosecuting, incarcerating, and depriving of property of Plaintiff DAVID KELLERAN.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION
(Negligence under the laws of the State of New York)

88.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "87" with the same force and effect as if fully set forth herein.

89.    Plaintiff's injuries were caused by the carelessness, recklessness, and negligence of Defendant CITY OF NEW YORK and its employees and agents, who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct described in this Complaint.

### AS AND FOR A FOURTEENTH CAUSE OF ACTION
(*Respondeat Superior* liability under the laws of the State of New York)

90.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "89" with the same force and effect as if fully set forth herein.

91.    Defendant CITY OF NEW YORK is vicariously liable for the acts of its employees and agents who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct described in this Complaint.

92.    As a result of the foregoing, Plaintiff DAVID KELLERAN is entitled to

18

compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**WHEREFORE**, Plaintiff DAVID KELLERAN demands judgment and prays for the following relief, jointly and severally, against Defendants:

(A)  full and fair compensatory damages in an amount to be determined by a jury;

(B)  punitive damages in an amount to be determined by a jury;

(C)  reasonable attorney's fees and the costs and disbursements of this action; and

(D)  such other and further relief that this Court deems just and proper.

Dated: New York, New York
       August 8, 2012

> Respectfully submitted,
>
> **THE TRAINOR LAW FIRM, P.C.**
> 419 Lafayette Street, 2nd Floor
> New York, New York 10003
> (212) 300-6557
>
> By:  _____
>      CRAIG TRAINOR (CT 1823)
>
> Attorney for Plaintiff DAVID KELLERAN

# Exhibit A



STATE OF NEW YORK
EXECUTIVE DEPARTMENT
**DIVISION OF ALCOHOLIC BEVERAGE CONTROL**
STATE LIQUOR AUTHORITY

Andrew M. Cuomo
Governor

Alfred E. Smith Building
80 South Swan Street, Suite 900
Albany, New York 12210-8002

Chairman
Dennis Rosen

Commissioner
Noreen Healey

Commissioner
Jeanique Greene

July 5, 2011

David H. Kelleran
66 Greenpoint Avenue
Brooklyn, NY 11220

RE: Non Sufficient Funds
    1189017 Kings OP (additional bar)(Main license: 1151003 Kings OP)

Dear Sir/Madam:

Please be advised, check no. 1066 in the amount of $4,382.00 for payment of fees for license no. 1189017, has been returned to the New York State Liquor Authority due to in sufficient funds.

Please forward WITHIN 10 DAYS OF THE DATE OF THIS LETTER, a **certified check or money order**, made payable to the New York State Liquor Authority in order to avoid possible disciplinary action.

Mail your certified check/money order to:

New York State Liquor Authority
ATTN: Secretary's Office
80 South Swan Street, Suite 900
Albany, New York 12210

If you have any questions, please feel free to contact me at 518.474.3114.

Sincerely,

REVENUE COLLECTION UNIT

Jacqueline Held
Secretary to the Authority

# Exhibit B

# The Brooklyn Paper
## The Brooklyn Paper
Your Neighborhood — Your News®

July 18, 2011 / Brooklyn news / Greenpoint / Brooklyn Nightlife

### Coco66 gets 86'ed! Cops shutter Greenpoint club in liquor violation

By Aaron Short

*The Brooklyn Paper*

Call it CoClosed66.

Police raided the rowdy bar Coco66 early on Sunday morning and arrested its owner for allegedly selling alcohol without a license for more than a week.

The NYPD, the State Liquor Authority and several other agency inspectors stormed into the Greenpoint Avenue club just after midnight on July 10, served a buildings violation, and poured out nearly $8,000 worth of spirits.

"This is something I've wanted to do for a while — we've had noise complaints about the place," said 94th Precinct Deputy Inspector Terence Hurson, adding that dumping the booze down the drains "took a while."

But Coco66 owner David Kelleran, who was in custody at the Greenpoint stationhouse for 36 hours, said he was being "bullied" by both the police and his neighbors.

"We don't fit into this neighborhood — the neighborhood has Yuppified," said Kelleran. "We've been abused. They're trying to put us out of business. They don't want us there."

Police have begun cracking down on noisy neighborhood hangouts after Community Board 1 members called for better enforcement against raucous bars and pondered a moratorium on new licenses this spring.



The Brooklyn Paper / Aaron Greenhood

*Coco66 — during happier times.*



Community Newspaper Group / Aaron Short

*Police shuttered Coco66 on Saturday after discovering the bar served booze without a liquor license.*

And the city has received seven complaints about Coco66 in the past year, most recently one for having over 75 people inside at a show — more than capacity.

That said, the bar has been a favorite among the neighborhoods indie and punk rock fans, and was nearing its sixth anniversary, when its liquor license lapsed.

Kelleran claimed that the license expired because a check bounced. He added that he did not see a warning letter from the State Liquor Authority until July 13, three days after the raid.

But a liquor authority spokesman said that Kelleran "waited until the last minute" before renewing his application — and he should have stopped serving beer and liquor when the license

became inactive.

Now the bar faces charges from the state, which could include hefty fines, the suspension and even cancellation of the license.

Neighbors on the street were shocked at what unfolded.

"Oh my God, no way — that's crazy!" said Brooke Schneider, who relaxed there a few times. "It was a good late-night spot. It's sad that there's one less music venue — we don't have that many in Greenpoint."

The hurdles to reopening Coco66 are steep, and expensive, but Kelleran hopes to do launch an even bigger space for bands.

"My plan is the exact opposite of loudmouths of the neighborhood — but right now I feel terrible," said Kelleran. "I feel defeated."

If he does reopen — with a new liquor license — he can expect a thirsty visitor.

"We'll go back there and check it out," said Hurson.

**Updated 7:10 pm, July 18, 2011:** Corrects an original misspelling of the bar owner's name.

©2011 Community Newspaper Group

# Exhibit C

Case 1:12-cv-03938-JBW-JO   Document 1   Filed 08/08/12   Page 26 of 28 PageID #: 26





**Summer Concerts Bring Unwelcome Noise; Stage Adjustments Made**
Aug 02, 2012

**Pols Rally for Restler**
Aug 02, 2012

**Leadership Change at Open Space Alliance**
Aug 02, 2012

**Ben Sosa Cleans Up New York Dining**
Aug 02, 2012

**Paddle with the North Brooklyn Boat Club!**
Aug 02, 2012

**Police Blotters (7/23 - 7/29) - 94th Precinct**
Aug 02, 2012

**Police Blotters (7/23 - 7/29) - 90th Precinct**
Aug 02, 2012

**Battle Over Upper East Side Trash Site Has Roots in Greenpoint**
Jul 26, 2012

**Levin to Open Budget Process to the Public**
Jul 26, 2012

**MAD to City: Stop Being a Tool for Shady Landlords**
Jul 26, 2012

# Garden Spotlight: Meet your New Commanding Officer

Nov 11, 2010

by Juliet Linderman

Terence Hurson might not look familiar, but he's certainly no stranger to North Brooklyn. As Hurson walks into the receiving area of the 94th precinct, where he assumed the position of Commanding Officer just twelve hours prior, he is greeted by a police officer who looks at him inquisitively. Hurson approaches, his bright blue tie matching his eyes almost perfectly, and shakes the officer's hand. "We've worked together before," Hurson says with a smile. "I'm new here, but I've been all over Brooklyn North." To be sure: he isn't kidding.

Hurson was reassigned to the 94th precinct on Friday after a four-year stint at the Office of Management, Analysis and Planning at One Police Plaza where he was primarily responsible for policy and procedure issues, and began his tenure on Monday morning.

"I officially started at midnight, so I came into the precinct at midnight to meet the guys working the night guard, then went home and came back at seven this morning," Hurson said. "I feel like I've come home."

Brooklyn certainly is home to Hurson, who was born and raised in Marine Park and has worked in several precincts in the borough throughout his career including the 79th, 84th and 60th precincts, as well as on the Brooklyn North Task Force.

Type your name and email address below, then click "Submit" to be added to our spam-free email list.

Name:

Email:

Subscribe

Case 1:12-cv-03933-JBW-JO    Document 1    Filed 08/08/12    Page 27 of 28 PageID #: 27

"Having almost always worked in North Brooklyn, I've worked with a lot of these officers before, it's like being back on my home turf after four years at One Police Plaza," Hurson said. "Brooklyn is the city for me. I was born here, raised here, and I police it. You could blindfold me and take me to any neighborhood in Brooklyn and I could probably tell you the block."

In addition to an exhaustive knowledge of prevalent issues in the borough of Brooklyn, Hurson has gained a wide range of experience—and an eclectic set of skills—from his various posts within the New York Police Department. Hurson's recent promotion to commanding officer is his biggest professional accomplishment to date, and one that he's been working towards his entire career.

"I'll basically be chief of police for the whole 94th precinct; it's a moment I've always been working towards for a long time," Hurson said. "They say C.O.s are the quarterbacks—gangs, traffic complaints—it all goes through us. I've come back to what I really love doing, and that's police work. I get to take the ideas that I learned at One P.P. and in my other positions and use them in the real world, and be out in the field as much as I can."

Another appealing part of the job is working in Greenpoint/Williamsburg, an area Hurson knows and loves. He is looking forward to learning about, and addressing, important issues in the Garden Spot and beyond.

"I'm very comfortable in Brooklyn. I can't wait to go out there and meet people who live in Greenpoint, and really do good police work here," he said.

For Hurson, being out in the field is one of the best parts of a vocation he fell in love with altogether by accident. Hurson went to School of Visual Arts, with plans of becoming the next Steven Spielberg. During his sophomore year, Hurson landed a job at Cadet Corp under the suggestion of his father, an NYPD officer. He spent two years in the program, after which he decided to pursue a career as a police officer.

"I fell in love with the idea of being a cop," Hurson said. "The idea of really helping people, catching the bad guys and taking them off the streets—it's what it's all about."

Share    Share    0



 Share / Save 🙂 💙 🔵 ⁞

# Comment

Name          ☑ Remember

E-mail

Website

Message