UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------X

COCO 66, INC.,

          Plaintiff,

     -against-

CITY OF NEW YORK, DEPUTY INSPECTOR TERENCE
HURSON, LIEUTENANT STEVEN SHEA, SERGEANT
ERNESTO NIEVES, SERGEANT JAMES SOARES, POLICE
OFFICER JAMES DELIGIO, POLICE OFFICER YURIY
MANZUROV, POLICE OFFICER LUKE TRIAN, and
AGENCY ATTORNEY MATTHEW BESSE, in Their
Individual and Official Capacities,

          Defendants.

--------------------------------------------------------------------------------X

**AMENDED
COMPLAINT**

12 CV 3938
(JBW) (JO)

<u>Jury Trial Demanded</u>

   Plaintiff COCO 66, INC., by its attorney, The Trainor Law Firm, P.C., makes the

following allegations against Defendants:

## PRELIMINARY STATEMENT

   1.   Plaintiff brings this action for compensatory damages, punitive damages, and

attorney's fees, pursuant to 42 U.S.C. §§ 1983 and 1988, for violations of its civil rights, as these

rights are secured by these statutes and the Constitutions of the State of New York and United

States.  Plaintiff also asserts supplemental state law claims.

## JURISDICTION

   2.   Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, and the

Fourth and Fourteenth Amendments to the United States Constitution.

   3.   This Court has jurisdiction to hear all claims in this matter, pursuant to 28 U.S.C.

§§ 1331, 1343, and 1367.

## VENUE

4.      Venue is properly laid in the Eastern District of New York, pursuant to 28 U.S.C.

§ 1391(b), because this is the District in which the claim arose.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter, pursuant

to FED. R. CIV. P. 38 (b).

## PARTIES

6.      Plaintiff COCO 66, INC. ("COCO 66" or "Plaintiff"), was and is a privately held

New York corporation that transacts business in the State of New York, and maintains corporate

offices at 68 Greenpoint Avenue, Kings County, New York 11222. David Kelleran, a New York

State resident and United States citizen, was and is the sole shareholder and owner of COCO 66.

That at all times hereinafter mentioned, COCO 66 owned and operated a restaurant called "68" at

68 Greenpoint Avenue, and a bar called "Coco66" at 66 Greenpoint Avenue, in Kings County,

New York.

7.      Defendant CITY OF NEW YORK was and is a municipal corporation duly

organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant CITY OF NEW YORK maintains the New York City Police

Department ("the NYPD"), a duly authorized public authority and/or police department,

authorized to perform all functions of a police department as per the applicable sections of the

aforementioned municipal corporation, the CITY OF NEW YORK.

9.      That at all times hereinafter mentioned, individually named defendant DEPUTY

INSPECTOR TERENCE HURSON was a duly sworn police officer and supervisor of the

NYPD and acting according to his official duties with the NYPD; and, as a Deputy Inspector, he

2

was the 94th Precinct's highest ranking uniformed officer, the commanding officer, and an NYPD policy maker with respect to the matters complained of herein and other NYPD matters.

10.     That at all times hereinafter mentioned, individually named defendant LIEUTENANT STEVEN SHEA was a duly sworn police officer and supervisor of the NYPD and acting according to his official duties with the NYPD; and, as a Lieutenant, he was a high-ranking uniformed officer with supervisory responsibilities, and an NYPD policy maker with respect to the matters complained of herein and other NYPD matters.

11.     That at all times hereinafter mentioned, individually named defendant SERGEANT ERNESTO NIEVES was a duly sworn police officer and supervisor of the NYPD and acting according to his official duties with the NYPD; and, as a Sergeant, he was a ranking uniformed officer with supervisory responsibilities, and an NYPD policy maker with respect to the matters complained of herein and other NYPD matters.

12.     That at all times hereinafter mentioned, individually named defendant SERGEANT JAMES SOARES was a duly sworn police officer and supervisor of the NYPD and acting according to his official duties with the NYPD; and, as a Sergeant, he was a ranking uniformed officer with supervisory responsibilities, and an NYPD policy maker with respect to the matters complained of herein and other NYPD matters.

13.     That at all times hereinafter mentioned, the individually named defendants, POLICE OFFICERS JAMES DELIGIO, YURIY MANZUROV, and LUKE TRIAN, were duly sworn police officers of the NYPD and were acting under the supervision of the NYPD and according to their official duties.

14.     That at all times hereinafter mentioned, the individually named defendant AGENCY ATTORNEY MATTHEW BESSE, an attorney admitted to the New York State Bar,

3

was an Agency Attorney of the NYPD and was acting under the supervision of the NYPD and according to his official duties.

15.    That at all times hereinafter mentioned, Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the CITY OF NEW YORK.

16.    Each and all of the acts of Defendants alleged herein were done by these Defendants while acting within the scope of their employment by Defendant CITY OF NEW YORK.

17.    Defendants DEPUTY INSPECTOR TERENCE HURSON, LIEUTENANT STEVEN SHEA, SERGEANTS ERNESTO NIEVES and JAMES SOARES, POLICE OFFICERS JAMES DELIGIO, YURIY MANZUROV, and LUKE TRIAN, and AGENCY ATTORNEY MATTHEW BESSE are sued in their individual and official capacities for the conduct alleged herein.

## FACTS

18.    On July 10, 2011, at approximately 12:15 a.m., David Kelleran, the sole shareholder and owner of COCO 66, was lawfully inside of an apartment located on the upstairs floor of 68 Greenpoint Avenue, in Kings County, New York, when the defendants knocked on the apartment door, instructed him to come with them downstairs to the restaurant and bar controlled by COCO 66, and informed him that a check he had recently sent to the New York State Liquor Authority ("the SLA") to renew the liquor license that permitted sale of alcoholic beverages in 68 and Coco66 had bounced.

19.    By letter dated July 5, 2011 (barely five (5) days prior to July 10, 2011, at 12:15

4

a.m.), the SLA, based in Albany, New York, informed Mr. Kelleran that "check no. 1066 in the amount of $4,382.00 for payment of fees for license no. 1189017, has been returned to the New York State Liquor Authority due to in sufficient *[sic]* funds." Letter from the SLA, dated July 5, 2011, signed by Jacqueline Held, attached hereto as Exhibit A ("Ex. A"). The letter further advised that Mr. Kelleran "Please forward WITHIN 10 DAYS OF THE DATE OF THIS LETTER, a **certified check or money order**, made payable to the New York State Liquor Authority in order to avoid possible disciplinary action." Ex. A (emphasis in original).

20.     Despite the SLA's informing Mr. Kelleran that he had "10 DAYS OF THE DATE OF THIS LETTER" to send the SLA a new check, on July 10, 2011, Defendants placed handcuffs on Mr. Kelleran's wrists and arrested him on the ground that his restaurant and bar were selling alcoholic beverages to its patrons without a valid liquor license. Defendants then transported Mr. Kelleran to a jail cell in the 94th Precinct, where he remained imprisoned for a number of hours until they transported him to the New York City Department of Corrections' Brooklyn Central Booking facility.

21.     Defendants imprisoned Mr. Kelleran until his arraignment, on July 11, 2011, in Kings County Criminal Court on the charges filed under docket number 2011KN054933. Upon the allegations of the arresting officer, the People of the State of New York charged Mr. Kelleran with violating New York's Alcoholic Beverage Control Law §§ 100(1) and 64-b. Specifically, the arresting officer alleged that alcoholic beverages were being sold to patrons in a "commercial establishment" located at "68 Greenpoint Avenue, County of Kings, State of New York," and that a review of SLA records revealed that Mr. Kelleran is the "owner of this location and that the liquor license for the location is expired."

22.     While Mr. Kelleran was in NYPD custody and imprisoned, Defendants, without

5

notice or process, permission or authority, or lawful warrant or justification, unlawfully
converted COCO 66's substantial stock of liquor and alcohol that it lawfully possessed, owned,
and stored at its location at 66 and 68 Greenpoint Avenue. Specifically, Defendants poured all of
the liquor and alcohol in Coco66 down the drain. Likewise, Defendants poured all of the liquor
and alcohol in 68 down the drain.

23.     Upon information and belief, POLICE OFFICERS JAMES DELIGIO, YURIY
MANZUROV, and LUKE TRIAN actively participated in destroying COCO 66's
aforementioned lawful property upon the orders and under the supervision of DEPUTY
INSPECTOR TERENCE HURSON, as well as under the supervision of LIEUTENANT
STEVEN SHEA and SERGEANTS ERNESTO NIEVES and JAMES SOARES. Likewise,
upon information and belief, this unlawful conduct was approved by AGENCY ATTORNEY
MATTHEW BESSE, in his capacity as a legal advisor to the NYPD.

24.     COCO 66 could no longer operate Coco66 or 68 because Defendants wrongfully
plundered and dumped the substantial stock of liquor and alcohol that COCO 66 owned for both
places down the drain. Unable to resupply Coco66's and 68's liquor and alcohol stock as a result
of Defendants' conduct, COCO 66 has been unable to reopen Coco66 or 68 for business. The
doors of Coco66 and 68 have been closed to the public since Defendants' wrongful conduct on
July 10, 2011.

25.     Defendants initiated the arrest and prosecution of Mr. Kelleran and the destruction
of Coco66's and 68's property for the purpose of obtaining a collateral objective outside the
legitimate ends of the legal process, to wit, to cover up their aforementioned abuse of authority
and illegal activity, and to unlawfully shut down COCO 66's lawfully operating commercial
establishments, Coco66 and 68.

26.     This abuse of process, deprivation of substantive and procedural due process, and

deprivation of property without due process of law was initiated at the highest levels of the

NYPD command structure. NYPD supervisory personnel and individually named defendant

DEPUTY INSPECTOR TERENCE HURSON made his personal involvement in violating

COCO 66's rights and the collateral and unlawful objective in this case clear when he informed

the *Brooklyn Paper* that, "'This is something I've wanted to do for a while – we've had noise

complaints about this place,' said 94th Precinct Deputy Inspector Terence Hurson, adding that

dumping the booze down the drains 'took a while.'" Aaron Short, *Coco66 gets 86'ed! Cops

shutter Greenpoint club in liquor violation*, BROOKLYN PAPER, July 18, 2011,

http://www.brooklynpaper.com/stories/34/29/wb_coco66closed_2011_07_22_bk.html, attached

hereto as Exhibit B ("Ex. B"). Defendant DEPUTY INSPECTOR TERENCE HURSON further

added that if COCO 66 reopened Coco66, "We'll go back there and check it out." Ex. B.

27.     What is more, by his own admission, Defendant DEPUTY INSPECTOR

TERENCE HURSON is command and policy-making personnel within the NYPD. He informed

the *Greenpoint Gazette* that, "'I'll basically be chief of police for the whole 94th precinct; it's a

moment I've always been working towards for a long time,' Hurson said." Juliet Linderman,

*Garden Spotlight: Meet your New Commanding Officer*, GREENPOINT GAZETTE, Nov. 11, 2010,

http://www.greenpointnews.com/news/2723/garden-spotlight-meet-your-new-commanding-

officer, attached hereto as Exhibit C ("Ex. C").

28.     The aforementioned abuse of process also compelled Mr. Kelleran to appear in

Kings County Criminal Court on August 16, 2011, with respect to the charges that Mr. Kelleran,

as the owner of COCO 66, was selling alcoholic beverages to patrons with an expired liquor

license. Notwithstanding the NYPD's wrongful conduct and the strong defenses to the

7

allegations in the accusatory instrument under Docket No. 2011KN054933, *see* Ex. A., Mr. Kelleran pleaded guilty to a non-criminal violation offense to dispose of the matter.

29. All of the acts complained of herein occurred while other NYPD officers and officials, including the individually named defendants, failed to intervene in the illegal conduct described herein.

30. All of these acts occurred as a direct result of the unconstitutional policies, customs or practices of the CITY OF NEW YORK, including, without limitation, the inadequate screening, hiring, retaining, training, promoting, and compensating and supervising its employees.

31. The acts complained of herein are not an isolated incident. Defendant CITY OF NEW YORK is aware, from lawsuits, notices of claim, press accounts, and complaints filed with the NYPD's Internal Affairs Bureau and the CITY OF NEW YORK's Civilian Complaint Review Board, that many NYPD officers and officials, including the individually named defendants, abuse their authority and are insufficiently trained regarding what constitutes probable cause to arrest individuals, and when they have legal justification and authority to summarily destroy lawfully held property.

32. Defendant CITY OF NEW YORK is further aware that such conduct and improper training has often resulted in a deprivation of civil rights. Despite such notice, Defendant CITY OF NEW YORK has failed to take corrective action. This failure caused the defendants in the present case to violate COCO 66's civil rights.

33. Moreover, upon information and belief, Defendant CITY OF NEW YORK was aware, prior to the incident, that the individual defendants in this case lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers and lawyers.

8

Despite such notice, Defendant CITY OF NEW YORK has retained these officers, and failed to adequately train and supervise them, and kept individually named defendant DEPUTY INSPECTOR TERENCE HURSON in a supervisory and command position.

34.    As a result of Defendants' conduct, Plaintiff COCO 66 sustained, *inter alia*, deprivation of property, economic loss, lost profits, reputational harm, and deprivation of its constitutional rights.

## FEDERAL CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. § 1983)

35.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "34" with the same force and effect as if fully set forth herein.

36.    All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under the color of state law.

37.    All of the aforementioned acts deprived Plaintiff COCO 66 of the rights, privileges and immunities guaranteed to citizens and persons of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

38.    The acts complained of were carried out by the individual defendants in their capacities as police officers and NYPD employees, with the entire actual and/or apparent authority attendant thereto.

39.    The acts complained of were carried out by the individual defendants in their capacities as police officers and NYPD employees, pursuant to the customs, usages, practices, procedures, and the rules of the CITY OF NEW YORK and the NYPD, and all under the

9

supervision of ranking officers of the NYPD, including Defendant DEPUTY INSPECTOR
TERENCE HURSON and LIEUTENANT STEVEN SHEA.

40.      Defendants, collectively and individually, while acting under color of state law,
engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective
municipality/authority, which is forbidden by the Constitution of the United States.

### AS AND FOR A SECOND CAUSE OF ACTION
(Deprivation of Due Process Under 42 U.S.C. § 1983)

41.      Plaintiff repeats, reiterates, and realleges each and every allegation contained in
paragraphs "1" through "40" with the same force and effect as if fully set forth herein.

42.      Defendants, without a lawful warrant, a legal privilege, judicial process, or any
justification whatsoever, unlawfully deprived COCO 66 of its lawful stock of alcohol and liquor,
which it lawfully kept on the premises of its commercial establishment, when they poured all of
Plaintiff's alcohol and liquor down the drain without notice or providing Plaintiff an opportunity
to be heard, causing the irreversible destruction of this property.

43.      As a result of the foregoing, Plaintiff COCO 66 was deprived of its protected
property interests and right to due process of law, causing it substantial economic injury.

### AS AND FOR A THIRD CAUSE OF ACTION
(Malicious Abuse of Process under 42 U.S.C. § 1983)

44.      Plaintiff repeats, reiterates, and realleges each and every allegation contained in
paragraphs numbered "1" through "43" with the same force and effect as if fully set forth herein.

45.      Defendants issued criminal process against Plaintiff by causing the arrest and
prosecution in Kings County Criminal Court of its sole shareholder and owner, David Kelleran.

46.      Defendants caused COCO 66's sole shareholder and owner to be arrested and
prosecuted in order to obtain a collateral objective outside the legitimate ends of the legal

10

process, to wit, to cover up their aforementioned abuse of authority and illegal activity, and to unlawfully shut down Plaintiff's lawfully operating commercial establishment Coco66 and 68, and thereby violated Plaintiff's right to be free from malicious abuse of process.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Failure to Intervene under 42 U.S.C. § 1983)

47.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "46" with the same force and effect as if fully set forth herein.

48.     Defendants had an affirmative duty to intervene on behalf of Plaintiff COCO 66, whose constitutional rights were being violated in their presence by each other and other police officers.

49.     Defendants failed to intervene to prevent the unlawful conduct described herein.

50.     As a result of the foregoing, Plaintiff COCO 66 has suffered substantial economic harm and reputational injury.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Deprivation of Substantive Due Process under 42 U.S.C. § 1983)

51.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "50" with the same force and effect as if fully set forth herein.

52.     Defendants' purposeful destruction of Plaintiff's lawful stock of alcohol and liquor was so outrageously arbitrary and conscience-shocking as to be a gross abuse of governmental authority, and so unjustified by any legitimate objective of law enforcement as to be completely barred by the Fourteenth Amendment.

53.     As a result of the foregoing, Plaintiff COCO 66 was deprived of its right to substantive due process, causing it substantial economic injury.

11

## AS AND FOR A SIXTH CAUSE OF ACTION
(Supervisory Liability under 42 U.S.C. § 1983)

54. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "53" with the same force and effect as if fully set forth herein.

55. The supervisory defendants personally caused Plaintiff COCO 66's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees.

56. Specifically, Supervisory Defendant DEPUTY INSPECTOR TERENCE HURSON directly participated in the violation of Plaintiff's rights, and evidenced his failure to remedy this violation, his participation in this violation, his authorization of this violation as a matter of policy, and his specific intent to violate Plaintiff COCO 66's constitutional rights by informing the *Brooklyn Paper* that, "'This is something I've wanted to do for a while –we've had noise complaints about the place,' said 94th Precinct Deputy Inspector Terence Hurson, adding that dumping the booze down the drains 'took a while.'" Ex. B. Touting his involvement in the violation of Plaintiff COCO 66's rights and candid in targeting Plaintiff for future potential violations of Plaintiff's constitutional rights, Supervisory Defendant DEPUTY INSPECTOR TERENCE HURSON told the *Brooklyn Paper* that if COCO 66 reopened Coco66, "We'll go back there and check it out." Ex. B.

57. By his own admission, Defendant DEPUTY INSPECTOR TERENCE HURSON is the Chief of Police in the NYPD's 94th Precinct, to wit, "'I'll basically be chief of police for the whole 94th precinct; it's a moment I've always been working towards for a long time,' Hurson said." Ex. C.

58. As a result of the supervisory defendants' conduct, and Supervisory Defendant

12

DEPUTY INSPECTOR TERENCE HURSON's and Supervisory Defendant LIEUTENANT STEVEN SHEA's conduct, Plaintiff COCO 66 has suffered a loss of liberty and property, a violation of procedural and substantive due process, and substantial economic and emotional injury.

### AS AND FOR A SEVENTH CAUSE OF ACTION
(Municipal Liability under 42 U.S.C. § 1983)

59.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "58" with the same force and effect as if fully set forth herein.

60.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority that is forbidden by the United States Constitution.

61.     Defendant DEPUTY INSPECTOR TERENCE HURSON was responsible for overseeing the operations of the NYPD's 94th Precinct. By his own admission, Defendant DEPUTY INSPECTOR TERENCE HURSON is the "chief of police for the whole 94th precinct . . . ." Ex. C. Accordingly, he controls and makes the policy for the 94th Precinct. Indeed, Defendant DEPUTY INSPECTOR TERENCE HURSON admitted that he was personally involved in, and in control of, the NYPD operation that deprived Plaintiff COCO 66 of its constitutional rights, to wit, "This is something I've wanted to do for a while – we've had noise complaints about this place,' said 94th Precinct Deputy Inspector Terence Hurson, adding that dumping the booze down the drains 'took a while.'" Ex. B. Accordingly, Defendant DEPUTY INSPECTOR TERENCE HURSON had final decision-making authority with respect to the violations of Plaintiff COCO 66's constitutional rights, and the CITY OF NEW YORK is, therefore, liable as a municipality for the violation of Plaintiff COCO 66's rights.

13

62.    Furthermore, the aforementioned customs, policies, usages, practices, procedures, and rules of the NYPD include, but are not limited to, arresting citizens without probable cause and then committing perjury and/or manufacturing evidence and/or engaging in falsification in an effort to convict such individuals. Additionally, the CITY OF NEW YORK engaged in a policy, custom or practice of summarily seizing and destroying the lawful property of individuals and corporations without notice or other indicia of due process of law. Further, the CITY OF NEW YORK engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training, promoting, compensating, and supervising its employees that was the driving force behind the violation of Plaintiff COCO 66's rights as described herein. As a result of the failure of the CITY OF NEW YORK to properly recruit, screen, train, discipline, promote, compensate, and supervise its officers, including the individual defendants, Defendant CITY OF NEW YORK has tacitly authorized, ratified, and has been deliberately indifferent to the acts and conduct complained of herein.

63.    The foregoing customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK and the NYPD constituted deliberate indifference to the safety, well-being, and constitutional rights of Plaintiff COCO 66; and, moreover, as evidenced by the admissions of NYPD policy-maker Defendant DEPUTY INSPECTOR TERENCE HURSON, these customs were specifically intended to deprive Plaintiff COCO 66 of its constitutional rights.

64.    The foregoing customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiff COCO 66 as alleged herein.

65.    The foregoing customs, policies, usages, practices, procedures, and rules of the

14

CITY OF NEW YORK and the NYPD were the driving force behind the constitutional violations suffered by Plaintiff COCO 66 as alleged herein.

66. As a result of the foregoing customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK and the NYPD, Plaintiff COCO 66 was subjected to a malicious abuse of process, a destruction of its lawful property, a violation of its substantive and procedural due process rights, and stripped of its right to have police officers intervene while and when its rights were being violated.

67. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating Plaintiff COCO 66's constitutional rights.

68. All of Defendants' aforementioned conduct deprived Plaintiff COCO 66 of federally protected rights, including, but not limited to, the right:

        A.    Not to be deprived of economic liberty without due process of law;

        B.    Not to be deprived of property without due process of law;

        C.    Not to be deprived of substantive due process of law;

        D.    To be free from government-executed conversion;

        E.    To be free from malicious abuse of process; and

        F.    To be free from the failure to intervene.

69. As a result of the foregoing, Plaintiff COCO 66 is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury.

15

## SUPPLEMENTAL STATE LAW CLAIMS

70.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "69" with the same force and effect as if fully set forth herein.

71.     Within ninety (90) days after the claim herein accrued, Plaintiff COCO 66's sole shareholder and representative David Kelleran duly served upon, presented to, and filed with, the CITY OF NEW YORK, a Notice of Claim setting forth all the facts and information required under the General Municipal Law 50-e.

72.     The CITY OF NEW YORK has wholly neglected or refused to make an adjustment or payment thereof, and more than thirty (30) days have elapsed since the presentation of such claim to the CITY OF NEW YORK.

73.     This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

74.     Plaintiff has complied with all conditions precedent to maintaining this action.

75.     This action falls within one or more of the exceptions as outlined in C.P.L.R. § 1602.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
(Conversion under the laws of the State of New York)

76.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "75" with the same force and effect as if fully set forth herein.

77.     Defendants, without authorization or justification, lawful privilege, or permission or authority, interfered with and exercised dominion and control over Plaintiff's lawful stock of alcohol and liquor and irreversibly destroyed it by pouring all of this alcohol and liquor down the drain, completely depriving Plaintiff COCO 66 of this property for which there could be no

16

return, nor demand for return.

78.    As a result of the foregoing, Plaintiff COCO 66 was deprived of this property, causing it substantial economic injury

## AS AND FOR A NINTH CAUSE OF ACTION
(Malicious Abuse of Process under the laws of the State of New York)

79.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "78" with the same force and effect as if fully set forth herein.

80.    Defendants issued criminal process against Plaintiff COCO 66's owner by causing his arrest and prosecution in Kings County Criminal Court.

81.    Defendants caused Plaintiff COCO 66's owner to be arrested and prosecuted in order to obtain a collateral objective outside the legitimate ends of the legal process, to wit, to cover up their aforementioned abuse of authority and illegal activity, and to unlawfully shut down Plaintiff's lawfully operating commercial establishment Coco66 and 68, and thereby violated Plaintiff's right to be free from malicious abuse of process.

## AS AND FOR A TENTH CAUSE OF ACTION
(Negligent Screening, Hiring, and Retention under the laws of the State of New York)

82.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraph numbered "1" through "81" with the same force and effect as if fully set forth herein.

83.    Upon information and belief, Defendant CITY OF NEW YORK failed to use reasonable care in the screening, hiring and retention of the individually named defendants who conducted and participated in the searching, prosecuting, and depriving of property of Plaintiff COCO 66.

84.    Defendant CITY OF NEW YORK knew, or should have know in the exercise of reasonable care, the propensities of the individual defendants to engage in the wrongful conduct

as alleged herein.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION
(Negligent Training and Supervision under the laws of the State of New York)

85.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "84" with the same force and effect as if fully set forth herein.

86.    Upon information and belief, Defendant CITY OF NEW YORK failed to use reasonable care in the training and supervision of the individually named defendants who conducted and participated in the destruction of Plaintiff COCO 66's property.

### AS AND FOR A TWELFTH CAUSE OF ACTION
(Negligence under the laws of the State of New York)

87.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "86" with the same force and effect as if fully set forth herein.

88.    Plaintiff's injuries were caused by the carelessness, recklessness, and negligence of Defendant CITY OF NEW YORK and its employees and agents, who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct as alleged herein.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION
(*Respondeat Superior* liability under the laws of the State of New York)

89.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "88" with the same force and effect as if fully set forth herein.

90.    Defendant CITY OF NEW YORK is vicariously liable for the acts of its employees and agents who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct as alleged herein.

91.    As a result of the foregoing, Plaintiff COCO 66 is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the

individual defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

**WHEREFORE**, Plaintiff COCO 66, INC., demands judgment and prays for the following relief, jointly and severally, against Defendants:

    (A)    full and fair compensatory damages in an amount to be determined by a jury;

    (B)    punitive damages in an amount to be determined by a jury;

    (C)    reasonable attorney's fees and the costs and disbursements of this action; and

    (D)    such other and further relief that this Court deems just and proper.

Dated: New York, New York
       January 14, 2013

                          Respectfully submitted,

                          **THE TRAINOR LAW FIRM, P.C.**
                          419 Lafayette Street, 2nd Floor
                          New York, New York 10003
                          (212) 300-6557

            By:                  
                          CRAIG TRAINOR (CT 1823)

                          Attorney for Plaintiff COCO 66, INC.

# Exhibit A



STATE OF NEW YORK
EXECUTIVE DEPARTMENT
**DIVISION OF ALCOHOLIC BEVERAGE CONTROL**
STATE LIQUOR AUTHORITY

Andrew M. Cuomo
Governor

Alfred E. Smith Building
80 South Swan Street, Suite 900
Albany, New York 12210-8002

Chairman
Dennis Rosen

Commissioner
Noreen Healey

Commissioner
Jeanique Greene

July 5, 2011

David H. Kelleran
66 Greenpoint Avenue
Brooklyn, NY 11220

RE: Non Sufficient Funds
1189017 Kings OP (additional bar)(Main license: 1151003 Kings OP)

Dear Sir/Madam:

Please be advised, check no. 1066 in the amount of $4,382.00 for payment of fees for license no. 1189017, has been returned to the New York State Liquor Authority due to in sufficient funds.

Please forward WITHIN 10 DAYS OF THE DATE OF THIS LETTER, a **certified check or money order**, made payable to the New York State Liquor Authority in order to avoid possible disciplinary action.

Mail your certified check/money order to:

New York State Liquor Authority
ATTN: Secretary's Office
80 South Swan Street, Suite 900
Albany, New York 12210

If you have any questions, please feel free to contact me at 518.474.3114.

Sincerely,

REVENUE COLLECTION UNIT

Jacqueline Held
Secretary to the Authority

# Exhibit B

# The Brooklyn Paper
## The Brooklyn Paper
Your Neighborhood – Your News®

July 18, 2011 / Brooklyn news / Greenpoint / Brooklyn Nightlife

## Coco66 gets 86'ed! Cops shutter Greenpoint club in liquor violation

By Aaron Short

*The Brooklyn Paper*

Call it CoClosed66.

Police raided the rowdy bar Coco66 early on Sunday morning and arrested its owner for allegedly selling alcohol without a license for more than a week.

The NYPD, the State Liquor Authority and several other agency inspectors stormed into the Greenpoint Avenue club just after midnight on July 10, served a buildings violation, and poured out nearly $8,000 worth of spirits.

"This is something I've wanted to do for a while — we've had noise complaints about the place," said 94th Precinct Deputy Inspector Terence Hurson, adding that dumping the booze down the drains "took a while."

But Coco66 owner David Kelleran, who was in custody at the Greenpoint stationhouse for 36 hours, said he was being "bullied" by both the police and his neighbors.

"We don't fit into this neighborhood — the neighborhood has Yuppified," said Kelleran. "We've been abused. They're trying to put us out of business. They don't want us there."

Police have begun cracking down on noisy neighborhood hangouts after Community Board 1 members called for better enforcement against raucous bars and pondered a moratorium on new licenses this spring.



The Brooklyn Paper / Aaron Greenhood

*Coco66 — during happier times.*



Community Newspaper Group / Aaron Short

*Police shuttered Coco66 on Saturday after discovering the bar served booze without a liquor license.*

And the city has received seven complaints about Coco66 in the past year, most recently one for having over 75 people inside at a show — more than capacity.

That said, the bar has been a favorite among the neighborhoods indie and punk rock fans, and was nearing its sixth anniversary, when its liquor license lapsed.

Kelleran claimed that the license expired because a check bounced. He added that he did not see a warning letter from the State Liquor Authority until July 13, three days after the raid.

But a liquor authority spokesman said that Kelleran "waited until the last minute" before renewing his application — and he should have stopped serving beer and liquor when the license

Coco66 gets 86'ed: Cops shutter Greenpoint club in liquor violation    http://www.brooklynpaper.com/stories/34/29/byb_coco66closed_2011:...

became inactive.

Now the bar faces charges from the state, which could include hefty fines, the suspension and even cancellation of the license.

Neighbors on the street were shocked at what unfolded.

"Oh my God, no way — that's crazy!" said Brooke Schneider, who relaxed there a few times. "It was a good late-night spot. It's sad that there's one less music venue — we don't have that many in Greenpoint."

The hurdles to reopening Coco66 are steep, and expensive, but Kelleran hopes to do launch an even bigger space for bands.

"My plan is the exact opposite of loudmouths of the neighborhood — but right now I feel terrible," said Kelleran. "I feel defeated."

If he does reopen — with a new liquor license — he can expect a thirsty visitor.

"We'll go back there and check it out," said Hurson.

Updated 7:10 pm, July 18, 2011: Corrects an original misspelling of the bar owner's name.

©2011 Community Newspaper Group

# Exhibit C





**Summer Concerts Bring Unwelcome Noise; Stage Adjustments Made**
Aug 02, 2012

**Pols Rally for Restler**
Aug 02, 2012

**Leadership Change at Open Space Alliance**
Aug 02, 2012

**Ben Sosa Cleans Up New York Dining**
Aug 02, 2012

**Paddle with the North Brooklyn Boat Club!**
Aug 02, 2012

**Police Blotters (7/23 - 7/29) - 94th Precinct**
Aug 02, 2012

**Police Blotters (7/23 - 7/29) - 90th Precinct**
Aug 02, 2012

**Battle Over Upper East Side Trash Site Has Roots in Greenpoint**
Jul 26, 2012

**Levin to Open Budget Process to the Public**
Jul 26, 2012

**MAD to City: Stop Being a Tool for Shady Landlords**
Jul 26, 2012

# Garden Spotlight: Meet your New Commanding Officer

Nov 11, 2010

by Juliet Linderman

Terence Hurson might not look familiar, but he's certainly no stranger to North Brooklyn. As Hurson walks into the receiving area of the 94th precinct, where he assumed the position of Commanding Officer just twelve hours prior, he is greeted by a police officer who looks at him inquisitively. Hurson approaches, his bright blue tie matching his eyes almost perfectly, and shakes the officer's hand. "We've worked together before," Hurson says with a smile. "I'm new here, but I've been all over Brooklyn North." To be sure: he isn't kidding.

Hurson was reassigned to the 94th precinct on Friday after a four-year stint at the Office of Management, Analysis and Planning at One Police Plaza where he was primarily responsible for policy and procedure issues, and began his tenure on Monday morning.

"I officially started at midnight, so I came into the precinct at midnight to meet the guys working the night guard, then went home and came back at seven this morning," Hurson said. "I feel like I've come home."

Brooklyn certainly is home to Hurson, who was born and raised in Marine Park and has worked in several precincts in the borough throughout his career including the 79th, 84th and 60th precincts, as well as on the Brooklyn North Task Force.

Type your name and email address below, then click "Submit" to be added to our spam-free email list.

Name:

Email:

Subscribe



"Having almost always worked in North Brooklyn, I've worked with a lot of these officers before, it's like being back on my home turf after four years at One Police Plaza," Hurson said. "Brooklyn is the city for me. I was born here, raised here, and I police it. You could blindfold me and take me to any neighborhood in Brooklyn and I could probably tell you the block."

In addition to an exhaustive knowledge of prevalent issues in the borough of Brooklyn, Hurson has gained a wide range of experience—and an eclectic set of skills—from his various posts within the New York Police Department. Hurson's recent promotion to commanding officer is his biggest professional accomplishment to date, and one that he's been working towards his entire career.

"I'll basically be chief of police for the whole 94th precinct; it's a moment I've always been working towards for a long time," Hurson said. "They say C.O.s are the quarterbacks—gangs, traffic complaints—it all goes through us. I've come back to what I really love doing, and that's police work. I get to take the ideas that I learned at One P.P. and in my other positions and use them in the real world, and be out in the field as much as I can."

Another appealing part of the job is working in Greenpoint/Williamsburg, an area Hurson knows and loves. He is looking forward to learning about, and addressing, important issues in the Garden Spot and beyond.

"I'm very comfortable in Brooklyn. I can't wait to go out there and meet people who live in Greenpoint, and really do good police work here," he said.

For Hurson, being out in the field is one of the best parts of a vocation he fell in love with altogether by accident. Hurson went to School of Visual Arts, with plans of becoming the next Steven Spielberg. During his sophomore year, Hurson landed a job at Cadet Corp under the suggestion of his father, an NYPD officer. He spent two years in the program, after which he decided to pursue a career as a police officer.

"I fell in love with the idea of being a cop," Hurson said. "The idea of really helping people, catching the bad guys and taking them off the streets—it's what it's all about."

Share    Share   0

**twitter**

Share / Save

# Comment

Name    ☑ Remember
E-mail
Website

Message

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X

COCO 66, INC.,

                                        Plaintiff,

                                                            12 CV 3938
              -against-                                     (JBW) (JO)

CITY OF NEW YORK, DEPUTY INSPECTOR TERENCE
HURSON, LIEUTENANT STEVEN SHEA, SERGEANT
ERNESTO NIEVES, SERGEANT JAMES SOARES, POLICE
OFFICER JAMES DELIGIO, POLICE OFFICER YURIY
MANZUROV, POLICE OFFICER LUKE TRIAN, and
AGENCY ATTORNEY MATTHEW BESSE, in Their
Individual and Official Capacities,

                                        Defendants.

-------------------------------------------------------------------------------X

**AMENDED COMPLAINT**

**THE TRAINOR LAW FIRM, P.C.**
Attorney for Plaintiff
419 Lafayette Street, 2nd Floor
New York, New York 10003
(212) 300-6557